UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GERALD HENNEGHAN | ) | Case No. 03-11853-SSM |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| GERALD HENNEGHAN | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 05-1220 |
| | ) | |
| COLUMBIA GAS OF VIRGINIA, | ) | |
| INC., *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**

This matter is before the court on motions by both defendants to dismiss the

complaint for lack of jurisdiction and for failure to state a claim for relief.  One of the

defendants has additionally moved to dismiss for insufficiency of service of process.  A

hearing was held on June 7, 2005.  The plaintiff was present in person and represented

himself.  The defendants were present by counsel.

<u>Background</u>

The debtor filed a voluntary petition for an adjustment of his debts under chapter 13

of the Bankruptcy Code in this court on April 17, 2003.[1]  A plan was not confirmed, and the

---

[1]  This was the debtor's fifth bankruptcy filing since 1998.  As will be discussed, he
(continued...)

1

case was converted to chapter 7 on May 6, 2004.  The debtor received a chapter 7 discharge

on September 14, 2004, and the case was thereafter closed on February 4, 2005.  Among the

creditors listed in his case was Columbia Gas of Virginia, Inc.  ("Columbia Gas").

The present action was filed on March 28, 2005, against Columbia Gas and against

Alliance One, Ltd. ("Alliance One").   The complaint, which seeks $2.42 million in

compensatory and punitive damages for an alleged violation of the automatic stay, is

pleaded in five counts.  These purport to state causes of action for racial and sex

discrimination (Count 1), retaliatory conduct (Count 2), harassment (Count 3), violation of

the automatic stay (Count 4), and violation of public policy (Count 5).[2]  The only facts

actually pleaded with respect to the alleged violations are that the debt, in the amount of

$564, was listed on a February 16, 2005, credit report under the name "ALLIANCEONE"

with a notation that the account was in a "collection" status as of January 2004, and that the

"original creditor" was "Columbia Gas."

Prior to the filing of the present action – and only 13 days after the order closing his

previous case – the debtor filed a chapter 7 petition in this court.  After the court entered an

order for the debtor to show cause why he should not be denied a discharge because he had

received a chapter 7 discharge in a case filed within six years of the present case – thereby

making him ineligible to receive a chapter 7 discharge in this case – the debtor moved to

---

[1](...continued)
subsequently filed a sixth case (now dismissed).

[2]  The present action is one of 17 virtually identical complaints filed by the debtor against
various creditors, all pleading the same causes of action and seeking the same amount of
damages.  Eight of the complaints are filed under the umbrella of the debtor's prior
bankruptcy case and nine under the umbrella of his most recently-filed case.

2

convert the case to chapter 13, and an order was entered on April 7, 2005, converting the

case.  After the chapter 13 trustee filed a motion to dismiss, the debtor, prior to the hearing

on the motion, filed his own motion to dismiss.  The court granted the debtor's motion, and

the case was dismissed (with prejudice to refiling for 180 days) on June 9, 2005.

<u>Discussion</u>

I.  <u>Whether the court has subject-matter jurisdiction
in the absence of an order reopening the debtor's prior case.</u>

Although the motions to dismiss raise a number of issues, the threshold question is

whether this court has jurisdiction to adjudicate the pleaded claims in the absence of an

order reopening the debtor's bankruptcy case.

A.

This court's jurisdiction derives from 28 U.S.C. § 1334, which confers on the district

courts of the United States jurisdiction over bankruptcy "cases" as well as over "civil

proceedings" that "arise under" the Bankruptcy Code, "arise in" a bankruptcy case, or are

"related to" a bankruptcy case.  Under 28 U.S.C. § 157(a), the district court may refer such

cases and proceedings to the bankruptcy judges of the district, which the United States

District Court for the Eastern District of Virginia has done by a standing order of reference

dated August 15, 1984.  Nothing in the statute expressly requires that a "case" be open

before a district court – and by extension, the bankruptcy court – may exercise jurisdiction in

a "civil proceeding" asserting rights arising under the Bankruptcy Code, at least when the

outcome would have no effect on the administration of the bankruptcy estate and the rights

asserted are personal to the debtor.  Indeed, it has been expressly held in this district that the

underlying bankruptcy case need not be reopened in order for a party to file a complaint to

3

determine the dischargeability of particular debts.  *In re Banks-Davis*, 148 B.R. 810, 812-13

(Bankr. E.D. Va. 1992) (Shelley, J.).

The present action, to be sure, is not a proceeding to determine the dischargeability of

a debt, and therefore does not literally fall within the holding of *Banks-Davis*.  Nevertheless –

and focusing for the moment solely on Count 4 of the complaint – the action is similar in

some respects to a dischargeability complaint in that it addresses rights arising under the

Bankruptcy Code that are personal to the debtor and that do not affect administration of the

estate.  It is difficult to see what practical benefit would accrue from the empty formality of

reopening the case as a prerequisite to the filing of what is essentially an independent civil

action.  *See Leach v. Buckingham (In re Leach)*, 194 B.R. 812, 815 (E.D. Mich 1996) ("The

reopening of a case is of no independent legal significance or consequence .... The effect ...

is merely to resurrect the court file from the stacks of the closed cases, or even from the

archives, to enable it to receive a new request for relief.").  The only benefit suggested by

the defendants for the reopening requirement is that the decision whether to reopen a closed

case is discretionary with the court.  *Hawkins v. Landmark Fin. Co. (In re Hawkins)*, 727 F.2d

324 (4th Cir. 1984) (affirming bankruptcy court's decision declining to reopen case in order

to bring a lien avoidance motion).  This discretion, the defendants urge, allows the court to

make a preliminary assessment of the merits of the proposed filing, thereby avoiding a

needless expenditure of judicial resources.  *See Thompson v. Virginia (In re Thompson),* 16

F.3d 576 (4th Cir. 1994) (affirming bankruptcy court's denial of chapter 7 debtor's motion

to reopen case to add unpaid court costs from state court criminal conviction, since debt was

nondischargeable as a matter of law); *In re Hardy*, 209 B.R. 371, 373 (Bankr. E.D. Va. 1997)

4

(St. John, J.) (before reopening a case to accord relief to the debtor, the court must determine

"if the underlying cause of action ... is 'likely to be sustained when considered on its

merits.'"); *In re Carter*, 156 B.R. 768 (Bankr. E.D. Va. 1993) (Shelley, J.) (declining to

reopen case to enjoin collection of a post-discharge equitable distribution award where the

state court had concurrent jurisdiction to determine whether the debtor's discharge barred

the award).

B.

There is no question that a long-established practice exists in this and probably most

districts of requiring a closed case to be reopened as a prerequisite to considering almost any

type of action or motion other than at least (in this district) a complaint to determine

dischargeability.   The question remains, however, whether the reopening requirement is

truly jurisdictional rather than procedural.  There are certainly reported decisions holding

that it is jurisdictional.  *See Walnut Assocs. v. Saidel*, 164 B.R. 487, 491 (E.D. Pa. 1994)

("[W]here a bankruptcy case is closed and the estate no longer exists, and where plaintiff

does not seek to have the bankruptcy case opened for cause ... the court is without

jurisdiction to entertain any proceedings[.]").  This appears, however, to be the minority

view.   A substantial number of reported decisions go the other way.  Some rely on the

principle of continuing jurisdiction to hold that "the closing of a bankruptcy case does not

affect the court's jurisdiction to determine matters relevant to the case" and that "the Court

retains jurisdiction to adjudicate matters arising under title 11, even after the case is closed

(and presumably, while the case remains closed)."  *Singleton v. Wells Fargo Bank, N.A. (In re*

*Singleton)*, 269 B.R. 270, 276-77 (Bankr. D.R.I. 2001), *vacated on other grounds by* 284 B.R.

5

322 (D.R.I. 2002); *Aiello v. Providian Fin. Corp. (In re Aiello)*, 231 B.R. 693, 707 (E.D. Ill.

1999) (holding, in class action suit against credit card issuers for allegedly intimidating

debtors into signing reaffirmation agreements, that reopening the closed cases "is of no legal

significance" because "subject matter jurisdiction exists to hear class allegations on behalf of

debtors whose cases were closed at the time of the filing of the ... complaint." ).  Other

courts have held that a formal motion and order reopening the case is unnecessary – at least

in the absence of any adverse effect on interested parties – because the court always has the

power to reopen *sua sponte*.  *In re Taylor*, 216 B.R. 515, 522 (Bankr. E.D. Pa. 1998).  And at

least one court has reasoned that a formal order reopening the case is unnecessary because a

ruling on the underlying request for relief implies or is tantamount to the reopening the case

for the purpose of making the ruling.  *Leach v. Buckingham (In re Leach)*, 194 B.R. 812, 815

(E.D. Mich. 1996).

      However, even though reopening a closed bankruptcy case may not essential to the

exercise of the jurisdiction conferred by 28 U.S.C. § 1334(b), such a requirement clearly has

value as a procedural mechanism by which the court may decline to hear the merits of the

underlying motion or action.  *Leach*, 194 B.R. at 815 ("[A]lthough the required reopening of

a closed bankruptcy case serves no substantive purpose, by refusing to reopen a case, a court

may effectively decline consideration of a proffered claim by way of its discretionary refusal

to revisit a case's substantive issues.").  In short, a requirement that the case first be

reopened – at least for consideration of matters other than non-dischargeability complaints –

serves a prudential even if not a jurisdictional function.

C.

The wisdom of requiring that the underlying bankruptcy case be reopened before the court will devote its resources to consideration of issues other than dischargeability is well-illustrated by the present action.  As noted, this is one of eight virtually-identical adversary proceedings – all seeking the same $2.42 million in compensatory and punitive damages – filed by the debtor in the closed case.  (Another nine were filed in the most-recent case). Such cookie-cutter pleadings are highly suggestive of a lack of underlying merit, as well as a lack of good faith by the debtor in filing them.   More importantly, none of the complaints plead facts showing any actual loss to the debtor from the claimed violations of the automatic stay and discharge injunction.  Furthermore, while violations of the discharge injunction generally occur after the closing of the case, violations of the automatic stay by definition occur while the case is open.  It is far from clear why the debtor waited until his case was closed to raise the alleged violations of the automatic stay or why the court should now entertain claims that could have been brought while the case was still open.

Additionally, to the extent that the actions complained of violated the discharge injunction rather than the automatic stay, there is a further reason to require reopening. Although a violation of the automatic stay may be redressed by the bankruptcy court under its civil contempt powers,[3] Congress has also provided a private right of action under which an individual injured by a willful violation of the automatic stay may recover compensatory and punitive damages and reasonable attorney's fees.  § 362(h), Bankruptcy Code; *Budget Serv. Co. v. Better Homes of Va.*, 804 F.2d 289 (4th Cir. 1986).  The automatic stay expires

---

[3] *Burd v. Walters (In re Walters)*, 868 F.2d 665 (4th Cir. 1989).

7

(except as to property of the estate) when the debtor is granted or denied a discharge. § 362(c)(2)(C), Bankruptcy Code.  With respect to dischargeable debts, however, the automatic stay is replaced by the discharge injunction.  § 524(a)(2), Bankruptcy Code. There is no private right of action for willful violation of the discharge injunction – as there is for violations of the automatic stay – and such violations are properly addressed as a contempt of court.  *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 186-87 (Bankr. E.D. Va. 2000).  Since contempt proceedings are brought in aid of the discharge order entered in the bankruptcy case, reopening of the case provides the logical procedural context for consideration of the motion.

Accordingly, because the underlying bankruptcy case has not been reopened, the court will grant the motion to dismiss, but without prejudice to the debtor's right to bring a motion to reopen his closed case and, if such motion is granted, to reinstate this action on the court's docket.  Notice of such motion must be given to the United States Trustee, the former trustee, and all creditors or parties in interest affected by the reopening.  LBR 5010-1.  This would include any party that is the intended object of a contempt motion or adversary proceeding.

## II. Whether the court has subject-matter jurisdiction over the discrimination claims

Counts 1, 2, 3, and 5 present an additional jurisdiction issue.  These counts attempt to assert claims of race and sex discrimination, retaliatory conduct, harassment, and violation of public policy.  It is highly questionable, however, whether they state *any* claim that is independent of the alleged violation of the automatic stay.  The counts in question are heavy on the buzz-words of discrimination lawsuits but utterly devoid of any facts tending to show

8

that the violation of the automatic stay was motivated by the plaintiff's race or sex as opposed to a desire to collect a debt, or that the plaintiff was treated differently than debtors of another race or sex.  It is of course true that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).  It is also true that courts must liberally construe the pleadings of *pro se* parties.  *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) ("In the great run of pro se cases, the issues are faintly articulated and often only dimly perceived.").  At the same time, the Fourth Circuit has instructed that "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001).

But regardless of whether Counts 1, 2, 3, and 5 state claims for relief, this court has no jurisdiction to entertain them.  *See Gates v. Didonato (in re Gates)*, No. 04-12076-SSM, 04-1240, 2004 WL 3237345 (Bankr. E.D. Va. Oct. 20, 2004) (dismissing claims under Fair Debt Collection Practices Act against collection agency that drafted the debtor's bank account to collect a prepetition debt and then left a dunning message on her answering machine).

Bankruptcy courts, like other Federal courts, are courts of limited jurisdiction and must be constantly alert to overstepping their jurisdictional bounds.  *Poplar Run Five Ltd. P'ship v. Virginia Elec. & Power Co. (In re Poplar Run Five Ltd. P'ship)*, 192 B.R. 848, 854-55 (Bankr. E.D. Va. 1995) (dismissing post-confirmation action to recover security deposit

9

from electric company for want of subject matter jurisdiction).  As noted, the grant of

subject-matter jurisdiction under 28 U.S.C. § 1334 extends to bankruptcy "cases" and to

civil proceedings "arising under" the Bankruptcy Code, "arising in" a bankruptcy case, and

"related to" a bankruptcy case.  A proceeding "arises under" the Bankruptcy Code if federal

bankruptcy law creates the cause of action or if the plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal bankruptcy law.  *Poplar Run Five*,

192 B.R. at 855.  Proceedings "arising in" a bankruptcy case are those that "are not based on

any right expressly created by [the Bankruptcy Code], but nevertheless, would have no

existence outside of the bankruptcy." *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H.*

*Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996) (quoting *Wood v. Wood (Matter of Wood)*, 825

F.2d 90, 97 (5th Cir. 1987)); *Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003) (debtor's

malpractice claim against his bankruptcy attorney for acts committed during the case "arises

in" the bankruptcy case within the meaning of 28 U.S.C. § 1334).  Finally, the "related to"

category of proceedings is "quite broad and includes proceedings in which the outcome

could have an effect upon the estate being administered." *Bergstrom*, 86 F.3d at 372 (citing

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)) (explaining that the test is whether

"the outcome of that proceeding could conceivably have any effect on the estate being

administered" or "could alter the debtor's rights, liabilities, options, or freedom of action").

Nevertheless, the "related to" category is not so broad as to encompass litigation of claims

arising under state law or non-bankruptcy Federal law that will not have an effect on the

bankruptcy estate, simply because one of the litigants filed a petition in bankruptcy. *See*

*New Horizon of N.Y., LLC v. Jacobs*, 231 F.3d 143 (4th Cir. 2000) (district court lacked even

10

"related to" jurisdiction over state law claims by entity formed to purchase debtor's assets in accordance with a confirmed plan against parties who allegedly interfered with the sale).

Counts 1, 2, 3, and 5 do not assert rights created by the Bankruptcy Code, they do not arise in the bankruptcy case, and they are not related to the bankruptcy case. At best (because they are predicated on the same conduct as the alleged violation of the automatic stay) they are related to a claim (violation of the automatic stay) over which this court could exercise subject-matter jurisdiction. That was the situation in *Gates*. The collection agency's conduct that was alleged to have violated the automatic stay and the discharge injunction was also alleged to have violated the Fair Debt Collection Practices Act. This court concluded, however, that the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), does not apply to bankruptcy courts, thereby precluding a bankruptcy court from exercising jurisdiction over the non-bankruptcy claims simply because they arose from the same set of facts as the bankruptcy claims. For that reason, and independent of the court's ruling with respect to the reopening of the debtor's closed bankruptcy case, Counts 1, 2, 3, and 5 must be dismissed for lack of subject-matter jurisdiction.

III. Whether proper service of process has been made on Alliance One, Ltd.

Service of process in an adversary proceeding is governed by Rule 7004. Although the rule permits the summons and complaint to be served nationwide by first-class mail, Fed.R.Bankr.P. 7004(b) and (d), service by mail upon a domestic or foreign corporation or upon a partnership or other unincorporated association requires that the summons and complaint be mailed

> to the attention of an officer, a managing or general agent, or to
> any other agent authorized by appointment or by law to receive

11

> service of process, and, if the agent is one authorized by statute
> to receive service and the statute so requires, by also mailing a
> copy to the defendant.

Fed.R.Bankr.P. 7004(b)(3). Thus, the process must be mailed to the attention of a named

officer of the corporation, to an appointed agent for service of process (such as a registered

agent), or to a statutory agent. The return of service filed in this action reflects that the

summons and complaint were mailed to defendant Alliance One, Ltd.,[4] at a street address in

Ohio, but not to the attention of a named officer or managing or general agent.[5] Since

Alliance One, Ltd., has not been properly served, the court will quash service of process as

to it.

IV. <u>Whether the debtor has standing to prosecute this action</u>.

The final issue raised by the motion to dismiss is the debtor's standing to maintain

the suit in light of his most recent bankruptcy filing, which was commenced as a chapter 7

case on February 17, 2005 (prior to the filing of the adversary proceeding) and converted to

a chapter 13 case on April 7, 2005 (after the filing of the adversary proceeding). That issue

has now become moot, since the case has been dismissed. § 349(b)(3), Bankruptcy Code

---

[4] Whether Alliance One, Ltd. (apparently a Canadian company), is the same entity as the "Alliance One" shown on the Experian credit report is a separate issue and one that the court does not reach in the context of the present motion to dismiss.

[5] Additionally, service was made by the defendant himself, which is arguably improper. Although in literal terms the requirement in Rule 7004(a) that service be made "by any person at least 18 years of age *who is not a party*" (emphasis added) specifically refers to personal rather than to mailed service, the officially-prescribed form for return on service contains the certification that the person signing is "not a party to the matter concerning which service of process was made." In any event, since neither defendant has made an issue of Mr. Henneghan having acted as his own process server, the court need not determine whether such service was proper. *See* Rule 12(h)(1), Fed.R.Civ.P. (insufficiency of service of process waived if not asserted in motion or responsive pleading).

(dismissal revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case). Nevertheless, some brief discussion is appropriate, since the issue may arise again.

There is no question that a debtor's pre-petition causes of action are property of the bankruptcy estate. § 541(a), Bankruptcy Code; *Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977, 981 (4th Cir. 1984). In a chapter 7 case, those causes of action, unless abandoned by the trustee or successfully exempted by the debtor, belong to the estate and can only be prosecuted by the trustee. *Nat'l Am. Ins Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) ("If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim."); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 535 (4th Cir. 1997) (only trustee has power to pursue debtor's prepetition cause of action). In a chapter 13 case, however, the debtor has, "*exclusive of the trustee*, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*)." § 1303, Bankruptcy Code (emphasis added). These include the power in § 363(b) to "use, sell, or lease" property of the estate. The only way to "use" a cause of action is to bring suit upon it or settle it. It therefore follows that a chapter 13 debtor has standing to bring suit on his or her own causes of action.

The most-frequently cited case to the contrary is *Richardson v. United Postal Service*, 195 B.R. 737 (E.D. Mo. 1996), which held that a chapter 13 trustee did not have standing to bring an employment discrimination suit against his employer in federal district court. *Id*. at 739. The only authorities cited for that proposition, however, were all chapter 7 cases, and the *Richardson* opinion does not address the effect of § 1303. In any event, *Richardson* is

13

distinctly a minority view.  At least three circuit courts of appeals have joined dozens of

district and bankruptcy courts in holding that Chapter 13 debtors have standing to litigate

claims belonging to the bankruptcy estate.  *See, e.g.*, *Cable v. Ivy Tech State Coll.*, 200 F.3d

467, 472-74 (7th Cir. 1999); *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2d

Cir. 1998) ("[A] Chapter 13 debtor, unlike a Chapter 7 debtor, has standing to litigate causes

of action that are not part of a case under title 11."); *Maritime Elec. Co. v. United Jersey Bank*,

959 F.2d 1194, 1209 n.2 (3d Cir. 1991) (Chapter 13 debtors are empowered to maintain suit

even after a bankruptcy trustee has been appointed: "The legislative history underlying §

1303 makes clear that … Congress intended [for] debtor[s] [to] have power to maintain suit

on [their] own behalf."); *see also Jackson v. Marlette*, 317 B.R. 573 (Bankr. D. Mass. 2004);

*York v. Bank of Am. (In re York)*, 291 B.R. 806 (E.D. Tenn. 2003); *Stansberry v. Uhlich

Children's Home*, 264 F. Supp. 2d 681 (N.D. Ill. 2003) (finding more persuasive the

reasoning of courts holding that Chapter 13 debtors have standing to bring suit); *In re

Bowker*, 245 B.R. 192 (Bankr. D.N.J. 2000) (holding that debtor alone had standing to sue

on behalf of the estate); *Donato v. Metro. Life Ins. Co.*, 230 B.R. 418, 425 (N.D. Cal. 1999)

(finding that a Chapter 13 debtor could prosecute claims because an essential feature of

Chapter 13 is that debtors possess and use estate property); *Travelers Indem. Co. of Ill., Inc. v.

Griner (In re Griner)*, 240 B.R. 432 (Bankr. S.D. Ala. 1999) (calling the *Richardson* decision

a "mistake" because it cited to chapter 7 case law); *Kelsey v. Waste Mgmt. of Alameda County*,

90 Cal. Rptr. 2d 510 (Cal. Ct. App. 1999); *Town of Hempstead Employees Fed. Credit Union

v. Wicks (In re Wicks)*, 215 B.R. 316 (Bankr. E.D.N.Y. 1997) (finding that debtors had

standing to move under § 362(h) for attorney fees for credit union's stay violation);

14

*Merchants & Farmers Bank v. Vail*, No. CV-96-V-2111W, 1996 WL 819806 at \*2 (N.D. Ala.

Sept. 17, 1996) (affirming decision of bankruptcy court holding that Chapter 13 debtors

could pursue prepetition state law claims); *In re Wirmel*, 134 B.R. 258, 260 (Bankr. S.D.

Ohio 1991) (debtor has concurrent power with Chapter 13 trustee to sue and be sued); *In re

Kutner*, 3 B.R. 422, 426 (Bankr. N.D. Tex. 1980) (stating that Chapter 13 debtor has

standing to sue and be sued).[6]

      The issue of a chapter 13 debtor's standing to sue on his or her own causes of action

is distinct from the question of whether a chapter 13 debtor may bring an action asserting the

avoidance powers (such as recovery of preferential payments and setting aside of fraudulent

conveyances and unperfected transfers) conferred on trustees by §§ 544 through 550,

Bankruptcy Code.  Although there is some division of opinion, this court agrees with the

majority view that a chapter 13 debtor cannot exercise trustee avoidance powers except as

specifically provided in § 522(h), Bankruptcy Code.  *But see Freeman v. Eli Lilly Fed. Credit

Union*, 72 B.R. 850, 854 (Bankr. E.D. Va. 1987) (holding that chapter 13 debtors, as the

"true representatives" of the chapter 13 estate, could exercise the trustee's "strong-arm"

avoidance powers.)  The present action, in any event, does not assert trustee avoidance

powers but rather the debtor's own claims arising from the defendant's alleged misconduct.

Thus, while the debtor did not have standing to bring suit at the time the action was

---

[6] The majority view is also supported by the legislative history.  The committee reports
accompanying the 1978 passage of the Bankruptcy Code, in discussing the status of the
trustee under § 326(a) as the representative of the estate and the capacity of the trustee under
§ 323(b) to sue and be sued, explains, "If the debtor remains in possession in a chapter 11
case, section 1107 gives the debtor in possession these rights of the trustee.... *The same
applies in a chapter 13 case.*"  H.R. Rep. No. 95-595, at 326 (1977); S. Rep. No. 95-989, at
37 (1978) (emphasis added).

commenced (because at that point he was a chapter 7 debtor, and the claim had neither been

abandoned by the trustee or exempted), he acquired standing once the case converted to

chapter 13.  Accordingly, the court would hold that the debtor had authority to prosecute the

complaint even if the case had not subsequently been dismissed.

V.

A separate order will be entered consistent with this opinion quashing service as to

Alliance One, Ltd., dismissing Counts 1, 2, 3, and 5 without prejudice for lack of subject-

matter jurisdiction, and dismissing Count 4 without prejudice to bringing of a motion to

reopen the plaintiff's closed bankruptcy case and, if such motion is granted, to reinstatement

of Count 4 on the docket.[7]


Date: _____          _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge

---

[7] If this action is reinstated as to Count 4, the court will treat the defendant's motion to
dismiss for failure to state a claim for relief as a motion for more definite statement and will
require the defendant to amplify Count 4 by identifying, by date, sender, and addressee, each
communication that is alleged to have constituted an attempt to collect a prepetition debt.
This will enable the defendant, and the court, to determine whether the alleged violation
related to the automatic stay or to the discharge injunction.  The dates are particularly
important in this instance, since Mr. Henneghan's bankruptcy case was dismissed three
times.  Although each dismissal order was ultimately vacated, no automatic stay was in
effect during the periods the case stood dismissed.  Additionally, until his chapter 13 case
was converted to chapter 7, debts incurred between the filing of the chapter 13 case and the
conversion to chapter 7 would not have been subject to the automatic stay.

Copies to:

Gerald Henneghan
10102 Parkington Court
Manassas, VA 20109
Plaintiff *pro se*

Robert M. Marino, Esquire
Reed Smith, LLP
1301 K Street, N.W.
Suite 1100 - East Tower
Washington, DC 20005-3317
Counsel for the defendants